**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN GRIECO, | |
| Plaintiff, | Civil Action No. 15-7026 (MAS) (DEA) |
| v. | OPINION |
| NJ DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

**SHIPP, District Judge**

Plaintiff Steven Grieco, through counsel, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights under the First Amendment. Presently before the Court is a motion to dismiss ("Motion") by Defendants New Jersey Department of Corrections ("NJDOC"), Gary M. Lanigan ("Lanigan"), and Stephen D'Illio ("D'Illio") (collectively "Movants"). (ECF No. 6.) Plaintiff opposed the Motion (ECF No. 7), and Movants replied (ECF No. 8). For the reasons stated below, the Motion is granted.

### I.   FACTUAL BACKGROUND

For the purposes of this Opinion, the Court accepts all facts alleged in the Complaint as true, and in the light most favorable to Plaintiff. Plaintiff is a prisoner confined at the New Jersey State Prison ("NJSP") in Trenton, New Jersey. (Compl. ¶ 2, ECF No. 1.) Plaintiff alleges that prison officials have repeatedly opened and read, and continue to open and read, his incoming legal mail in violation of his constitutional rights. (*Id.* ¶¶ 10-31.) Plaintiff further alleges that he has sent correspondence to prison administrators complaining about the alleged violations, but the

alleged violations continue to this day. (*Id.* ¶¶ 23, 29.) Specifically, Plaintiff alleges that he sent correspondence to D'Illio, allegedly the Administrator of NJSP at the time, and subsequently sent multiple pieces of correspondence to Defendant Steven Johnson ("Johnson"), the current Administrator of NJSP. (*Id.* ¶¶ 13-14, 18.) The Complaint further alleges that Johnson responded to Plaintiff's correspondence directly. (*Id.* ¶¶ 15-17.) The Complaint contains no factual allegations regarding Lanigan.

In the instant Motion, the Movants seek to dismiss all claims against them. Although Johnson appears to join in the Motion, (*see* Notice of Mot. 2, ECF No. 6), the brief submitted by the Movants does not seek to dismiss any claims asserted against Johnson, (*see* Movant's Br. 4-5, ECF No. 6-1).

## II. STANDARD OF REVIEW

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint . . . does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . .

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see Connelly v. Lane Constr. Corp.*, No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (precedential). On a motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure

2

12(b)(6), a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

### III. DISCUSSION

A plaintiff can pursue a cause of action under § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must establish, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Morrow v. Balaski*, 719 F.3d 160, 166-67 (3d Cir. 2013).

#### A. Claims Against NJDOC

Movants argue that claims against NJDOC should be dismissed because it is not a person amenable to suit under § 1983. The Court agrees. The Eleventh Amendment to the United States Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As such, the Eleventh Amendment protects states and their agencies and departments from suit in federal court *regardless of the type of relief sought*. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139,

146 (1993) (holding that the *Ex parte Young* exception to Eleventh Amendment immunity is inapplicable to "the States or their agencies, which retain their immunity against all suits in federal court"). Section 1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 338 (1979).

Courts have repeatedly held that NJDOC is a state agency entitled to immunity. *See, e.g., Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 224 n.9 (3d Cir. 2015) ("[T]he Court correctly dismissed the NJDOC from this case on Eleventh Amendment grounds."); *Bell v. Holmes*, No. 13-6955, 2015 WL 851804, at *3 (D.N.J. Feb. 23, 2015); *Wimbush v. Jenkins*, No. 13-4654, 2014 WL 1607354, at *4 (D.N.J. Apr. 22, 2014); *Love v. Dep't of Corr.*, No. 13-1050, 2014 WL 46776, at *2 (D.N.J. Jan. 6, 2014). As such, Movant's Motion is granted with regard to the NJDOC, and all claims against NJDOC are dismissed.[1]

### B. Claims Against D'Illio

Next, Movants argue that the claims against D'Illio should be dismissed because Plaintiff fails to plead sufficient facts to state a claim for relief. As there is no allegation that D'Illio is a member of the mailroom staff, nor is there any allegation that D'Illio personally opened and read Plaintiff's legal mail, the Court construes Plaintiff's claims against D'Illio as one of supervisory liability.

In a § 1983 claim, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has

---

[1] Although NJDOC moves under Rule 12(b)(6), "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction," and thus, "the motion may properly be considered a motion to dismiss the complaint for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996).

4

violated the Constitution." *Id.* While affirmative action by a supervisory official is not required to state a § 1983 claim, Plaintiff must still show that "a supervisor . . . had knowledge and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med. Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 2042 (2015) (quotations omitted); *see Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."). "[A]llegations [that] . . . merely assert their involvement in the post-incident grievance process" are insufficient to establish liability. *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005). "Merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015).

However, there is case law suggesting that repeated written complaints to a supervisory defendant of an *ongoing* constitutional violation may be sufficient to establish the deliberate indifference by circumstantial evidence. *See, e.g., Cardona v. Warden–MDC Facility*, No. 12-7161, 2013 WL 6446999, at *5 (D.N.J. Dec. 6, 2013) (holding that plaintiff stated a valid denial of medical services claim against the prison warden because plaintiff alleged an ongoing constitutional violation, and alleged that the warden was made aware of the ongoing violation through repeated written requests); *Carter v. Smith*, No. 08-279, 2009 WL 3088428, at *6 (E.D. Pa. Sept. 23, 2009) ("Where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly.") (quoting *Harnett v. Barr*, 538 F. Supp. 2d 511, 524-25 (N.D.N.Y. 2008)). But these cases require the plaintiff to establish an ongoing violation that can be remedied by the supervisory official. Grievances of past violations will not suffice because the

supervisor's actions, or lack thereof, would not have caused the plaintiff additional injury. *See Robinson v. Ricci*, No. 08-2023, 2012 WL 1067909, at \*10 (D.N.J. Mar. 29, 2012) (finding no personal involvement when a supervisory official was made aware of a constitutional violation after it had already occurred); *Carter*, 2009 WL 3088428, at \*6 (distinguishing allegations of ongoing violations from those that already occurred).

Here, Plaintiff fails to adequately allege supervisory liability through personal knowledge and acquiescence. The only factual allegation contained in the Complaint regarding D'Illio is that "[o]n April 15, 2015, Mr. Grieco, through legal counsel, informed the administrator at NJSP that Grieco's legal mail was being opened outside of his presence and he was receiving it already opened." (Compl. ¶ 13 (citing Ex. 1, Letter to D'Illio, ECF No. 1-1).) All other factual allegations regarding supervisory claims are against Johnson, the current administrator of the NJSP, who has not moved to dismiss any claims. As such, although Plaintiff generally argues that D'Illio "knew that the opening of legal mail violated the State and Federal Constitutions" (Pl.'s Opp'n Br. 4), there are insufficient allegations to establish that D'Illio knew *Plaintiff's* legal mail was being opened and read. An allegation that a single piece of correspondence was sent to D'Illio—where there is no additional allegation that he responded or even had knowledge of the correspondence, and where he appears to have left his post and been replaced by Johnson shortly after the aforementioned correspondence was sent—is insufficient to establish D'Illio's personal knowledge and acquiescence.

In his opposition brief, Plaintiff makes a new assertion, not pled in the Complaint, that a supervisory policy or practice led to the violation of his rights. However, that assertion is not supported by the allegations in the Complaint. "Although a court on a motion to dismiss ordinarily must accept the allegations in the complaint as true, it is not compelled to accept assertions in a

brief without support in the pleadings." *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 232 (3d Cir. 2015) (quotations omitted). In the Complaint, Plaintiff identified two policies, referenced by Johnson in his correspondence with Plaintiff's counsel that may have led to the opening of legal mail. First, Johnson "speculated that the reason the mail may have been opened was paper-clips or staples." (Compl. ¶ 15.) Second, Johnson stated that prison regulations allowed the opening of legal mail in Plaintiff's presence. (*Id.* ¶ 17.) Plaintiff alleges that his legal mail contained no paper-clips or staples, and that various pieces of mail were opened outside of his presence. (*Id.* ¶¶ 16, 18.) Based on these allegations, no policy or practice led to the alleged violation of Plaintiff's rights—it was the alleged failure of the mailroom staff to follow established policies that resulted in the violation. Plaintiff further argues that D'Illio failed to properly employ the established policies and created an environment of unreasonable risk. However, as stated above, allegations about a single piece of correspondence sent to D'Illio falls far short of raising a reasonable inference that *D'Illio* was responsible for the alleged failure to enforce the policies, which then led to the alleged violation of Plaintiff's rights. Indeed, as alleged in the Complaint, it was Johnson who referenced the policies in the first place, not D'Illio. "A claim has facial plausibility [only] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiff's new assertion in his opposition brief, when read in connection with the Complaint, fails to meet this standard.

To the extent that Plaintiff argues that claims against D'Illio should not be dismissed because Plaintiff also seeks injunctive relief from him, that argument is not applicable here. As Plaintiff acknowledges, D'Illio is no longer the Administrator of the NJSP, (*see* Compl. ¶ 5), so

he no longer has authority to implement any injunctive relief Plaintiff seeks. *See Larsen v. State Emps.' Ret. Sys.*, 553 F. Supp. 2d 403, 414-15 (M.D. Pa. 2008) ("Larsen's claims against Frankforter . . . [fail] because Frankforter has no authority to provide the purported prospective relief Larsen seeks."). Accordingly, Movant's Motion is granted with regard to D'Illio, and all claims against D'Illio are dismissed for failure to state a claim upon which relief may be granted.

## C. Claims Against Lanigan

Finally, Movants argue that the claims against Lanigan should also be dismissed because Plaintiff fails to plead sufficient facts to state a claim for relief. With regard to Plaintiff's claims for money damages against Lanigan, those claims fail for substantially the same reason as his claims against D'Illio—while the Complaint contains only one factual allegation regarding D'Illio, it contains no factual allegations whatsoever against Lanigan. If Plaintiff's supervisory claims against D'Illio, based on the allegation of one piece of correspondence, are insufficient to state a claim, his claims against Lanigan, based on no factual allegation of any kind, must also fail. The inference that Lanigan, the Commissioner of NJDOC, sits in the chain of supervisory authority and has some tangential responsibility to supervise the mailroom staff in one of the many state prisons under his control, is grossly insufficient to hold him responsible for the mailroom staff's alleged violation of Plaintiff's rights—in fact, that rationale would essentially be a claim for *respondeat superior*, which is specifically prohibited in § 1983 actions, as explained above.

Plaintiff argues that claims against Lanigan should not be dismissed because Plaintiff seeks injunctive relief from him. However, the injunctive relief sought by Plaintiff is for Defendants to "cease and desist from opening and reading his legal mail in violation of the First Amendment to the United States Constitution." (Compl. 9.) Lanigan cannot provide such relief since there are no allegations that Lanigan has opened and read, and continues to open and read, Plaintiff's legal

mail. *See Dickerson v. SCI Graterford*, 453 F. App'x 134, 137 n.3 (3d Cir. 2011) (upholding district court's dismissal of claims for injunctive relief against supervisory officials because "the only injunctive relief Dickerson requested was against the doctors, seeking that they reinstate his 'previous pain treatment'"). Moreover, as discussed above, there is no viable policy claims against him. Thus, Movant's Motion is granted with regard to Lanigan, and all claims against Lanigan are dismissed for failure to state a claim upon which relief may be granted.[2]

## IV. CONCLUSION

For the reasons set forth above, the Motion is granted. All claims against Defendant NJDOC are dismissed with prejudice, and all claims against D'Illio and Lanigan are dismissed without prejudice.[3]

                                                                       s/ Michael A. Shipp
                                                                       **Michael A. Shipp**
                                                                       **United States District Judge**

Dated: June 30, 2016

---

[2] The Court notes that because Plaintiff is a prisoner seeking redress from officers and employees of a governmental entity, the Court is obligated to *sua sponte* screen the Complaint. *See* 28 U.S.C. § 1915A(a). The Court has conducted such screening, and finds that aside from the claims dismissed herein, all other claims are allowed to proceed at this time.

[3] To the extent Plaintiff wishes to amend the Complaint, he should follow the proper procedures to do so. *See* Fed. R. Civ. P. 15(a); L. Civ. R. 7.1(f). Plaintiff should also be aware that any amended complaint may also be subject to screening under § 1915A(a). *See Awala v. N.J. Dep't of Corr.*, 227 F. App'x 133, 135 (3d Cir. 2007) (affirming screening dismissal of amended complaint under § 1915A).

9